**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

DEMETRIUS L. WOODS                                                            PLAINTIFF
ADC # 108514

v.                                      2:24CV00026-DPM-JTK

DOE, et al.                                                                  DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition ("Recommendation") has been sent to United

States District Judge D.P. Marhsall, Jr.  Any party may file written objections to all or part of this

Recommendation.  If you do so, those objections must: (1) specifically explain the factual and/or

legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14)

days of this Recommendation.  By not objecting, you may waive the right to appeal questions of

fact.

**DISPOSITION**

**I.      Introduction**

Demetrius L. Woods ("Plaintiff") is incarcerated at the East Arkansas Regional Unit of the

Arkansas Division of Correction ("ADC").  Plaintiff sued multiple individuals alleging violations

of his constitutional rights.  (Doc. Nos. 13, 14).  Only Plaintiff's excessive force claim against

Defendant Curry Branham remain pending.  (Doc. Nos. 13, 14, 15, 18, 55, 57).

Defendant Branham has filed a Motion for Summary Judgment on the merits of Plaintiff's

claims, Brief in Support, and Statement of Facts. (Doc. Nos. 66-68).  Plaintiff has responded.  (Doc.

Nos. 74-76).  Defendant Branham has not filed a reply and the time for doing so has passed.

After careful consideration of the record before me, and for the reasons explained below, I recommend Defendant Branham's Motion be granted.

## II.    Plaintiff's Claims

Plaintiff's excessive force claim against Defendant Branham remains pending. (Doc. No. 13 at 40; Doc. No. 14 at 42). According to Plaintiff, he was in his cell with his arms handcuffed behind him. (Doc. No. 13 at 45; Doc. No. 14 at 47). Plaintiff explained that he wanted to get his property and "just stood there calling Sgt. Knight's name." (Doc. No. 13 at 40; Doc. No. 14 at 42). Defendant Branham then became combative and allegedly used excessive force against Plaintiff even though Plaintiff never resisted. (Doc. No. 13 at 40; Doc. No. 14 at 42). Defendant Branham took a set of leg irons and "placed them on the handcuffs that [were] already holding [Plaintiff's] arms behind [his] back." (Doc. No. 13 at 45; Doc. No. 14 at 47). Defendant Branham allegedly placed "the other side of the leg iron through the bean hole, closed the door, placed his foot on the door, and pulled with brute force intending to hurt" Plaintiff. (Doc. No. 13 at 45; Doc. No. 14 at 47).

## III.    Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot

simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1, Rules of the United States District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED. R. CIV. P. 56(e).

## IV.    Discussion

Plaintiff sued Defendant Branham in his personal and official capacities. (Doc. No. 13 at 2; Doc. No. 14 at 4).

### A.    Personal Capacity Claims

Defendant Branham maintains that there was no violation of Plaintiff's constitutional rights and that he is entitled to qualified immunity. (Doc. No. 68 at 4-8). And even if there was a violation, Defendant Branham maintains that no clearly established law would have put him on notice that his actions were unlawful. (Id. at 8-9).

#### 1.    Qualified Immunity

Defendants ask the Court to dismiss Plaintiff's claims against them in their individual capacities based on qualified immunity. Qualified immunity shields a government official from liability when his conduct does not violate "clearly established statutory or constitutional rights of

3

which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] "'A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Thurmond v. Andrews, 972 F.3d 1007, 1012 (8th Cir. 2020) (internal citation omitted). In considering whether a right is clearly established, courts do not look at precedent "at a high level of generality." Id. Instead, courts "look for a controlling case or a robust consensus of cases of persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Id. (internal citation omitted). A defendant is entitled to qualified immunity only if no reasonable fact finder could answer both questions—whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right and whether that right was so clearly established that a reasonable official would have known that his

---

[1]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

or her actions were unlawful—in the affirmative.  Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 2. Excessive Force

Plaintiff alleges Defendant Branham used excessive force against him when Defendant Branham used leg chains to secure the cuffs on Plaintiff's hands while Plaintiff was in his cell. "After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment."  Jackson v. Gutzmer, 866 F.3d 969, 974 (8th Cir. 2017).  The core judicial inquiry in an excessive force claim is whether the force was used in a "good-faith effort to maintain or restore discipline, or was instead used maliciously and sadistically to cause harm."  Flemons v. Devane, 779 Fed. Appx. 423, 425 (8th Cir. 2019) (per curiam) (citing Wilkins v. Gaddy, 559 U.S. 34, 36-39 (2010)).  An officer acts maliciously when he takes a course of action, without just cause or reason, that was intended to injure the inmate. United States v. Miller, 477 F.3d 644, 647 (8th Cir. 2007) (internal citations omitted).  An officer behaves sadistically if he acts with "extreme or excessive cruelty or by delighting in cruelty."  Id.

In making the inquiry whether an officer acted in good faith to restore or maintain discipline, or if the officer acted maliciously and sadistically to cause harm, courts consider: "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted . . . ."  Jackson, 866 F.3d at 974.  Courts may also consider the threat reasonably perceived by the officer, and "any efforts used to diminish the severity of a forceful response."  Walker v. Bowersox, 526 F.3d 1186, 1188 (8th Cir. 2008).  Pain inflicted during a prison security measure is not cruel and unusual punishment only because in hindsight the degree of force used for security purposes was unreasonable.  Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)).  Rather,

guards will be liable only "if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.'" Id. (internal citation omitted). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in the light of the particular circumstances." Story v. Norwood, 659 F.3d 680, 686 (8th Cir. 2011) (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

Even with malicious and sadistic motivation, not every use of physical force rises to the level of a constitutional violation. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force . . . .'" Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). But "any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind' does" constitute a violation. Irving, 519 F.3d at 446. There is no significant injury threshold in an excessive force claim. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). However, "[t]he extent of injury may . . . provide some indication of the amount of force applied." (Id.). Threats of death together with readily available means may "form the basis of an injury sufficiently serious to implicate the Eighth Amendment." Irving, 519 F.3d at 449.

***

A little background provides context for the September 20, 2023, incident giving rise to this lawsuit. During his deposition, Plaintiff testified that on June 18, 2023, he assaulted another inmate because Plaintiff witnessed the inmate at the foot of Plaintiff's bed "with his private part in his hand." (Doc. No. 66-1 at 4:23-5:2). A PREA investigation was opened. (Id. at 5:2). At the time of the incident, Defendant Branham was trying to move Plaintiff into a cell with a different inmate; Plaintiff refused because he did not want a cellmate considering his recent experience. (Id. at 5:2-5:10). Consequently, Plaintiff was placed on behavior control for 72 hours and Plaintiff's

6

property was then taken from him.  (Id. at 5:10-5:20).   After 72 hours, Defendant Branham asked Plaintiff if he was going into a cell with another inmate and Plaintiff refused.  (Id. at 5:21-6:3). Plaintiff was placed on behavior control again and was denied his property and a shower, among other things, and was held in a dirty hallway cell.  (Id. at 6:4-6:14).   This pattern continued generally until July 10, 2023, when Plaintiff was "moved to the handicap" – cell six in the north wing of the east building.  (Doc. No. 66-1 at 6:15-7:19).  At that point, some of Plaintiff's property was returned to him.  (Id. at 7:20-8:8).   But Sergeant Knight refused to give Plaintiff some of his belongings.   (Id. at 8:18-8:21).

On September 20, 2023, Defendant Branham went to the yard to escort Plaintiff back to his cell.  (Id. at 9:13-9:14).  Plaintiff was placed in cuffs.  On the way back to Plaintiff's cell, Defendant Branham and Plaintiff walked past Knight's office and Plaintiff "just stood there" and began yelling at Knight to come out.  (Id. at 10:3-10:).   Defendant Branham physically tried to move Plaintiff along but Plaintiff urged Defendant Branham to tell Knight to come out and talk. (Id. at 10:20-8:8).   According to Plaintiff, Defendant Branham advised Plaintiff at that time "you don't do what you want to do, you do what I tell you to do."  (Doc. No. 66-1 at 10:12-10:13). Defendant Branham then continued escorting Plaintiff to his cell.  Correctional Officers Sutton and Copeland assisted Defendant Branham with the escort.  (Doc. No. 67 at ¶ 4; Doc. No. 76).

The incident on which Plaintiff bases his claim against Defendant Branham followed. Plaintiff does not contest the sequence of events and much of what took place was captured on video.  (Doc. No. 70).

Defendant Branham and the accompanying officers entered a hallway with Plaintiff.  (Doc. No. 67 at ¶ 6; Doc. No. 76).   Plaintiff's hands were cuffed behind his back.  (Doc. No. 70).  Upon reaching Plaintiff's cell, Defendant Branham entered the cell, inspected the cell, and locked the

cell door after Plaintiff was back inside. (Doc. No. 67 at ¶¶ 7-9; Doc. No. 76 at ¶ 7). Defendant Branham asked Plaintiff to turn his back to the door and lean against the trap so Defendant Branham could remove Plaintiff's handcuffs. (Doc. No. 67 at ¶ 10; Doc. No. 76). But Plaintiff admittedly refused to relinquish the cuffs. (Doc. No. 67 at ¶ 11; Doc. No. 76 at ¶ 12). Plaintiff did not want to surrender the cuffs until he talked to Captain Mixon or Knight. (Doc. No. 67 at ¶ 12; Doc. No. 76 at ¶ 12). Plaintiff admits he was retaining the cuffs as a tool to get his property back. (Doc. No. 67 at ¶ 13; Doc. No. 76).

At this point Defendant Branham asked another officer to bring leg restraints because he was trained on how to remove handcuffs using leg restraints. (Doc. No. 67 at ¶¶ 14, 15; Doc. No. 76). The technique involves attaching one end of the leg restraints to the inmate's handcuffs and running the other end through the trap. (Doc. No. 67 at ¶ 15; Doc. No. 76). This enables an officer to keep an inmate near the trap by exerting pressure on the leg restraints. (Doc. No. 67 at ¶ 15; Doc. No. 76). This method also prevents an inmate from jerking away when one cuff is released. (Doc. No. 67 at ¶ 15; Doc. No. 76). Cuffs are made of hard metal and can be swung and used as a weapon. (Doc. No. 67 at ¶ 15; Doc. No. 76). An inmate with one cuff unsecured is thus a serious safety concern. (Doc. No. 67 at ¶ 15; Doc. No. 76).

Defendant Branham entered Plaintiff's cell at approximately 8:11:27 to secure one end of the leg restraints to Plaintiff's handcuffs. (Doc. No. 67 at ¶ 19; Doc. No. 76 at ¶ 19). Defendant Branham passed the other end of the leg restraints through the trap to Officer King, who took the other end of the leg restraints at 8:11:50. (Doc. No. 67 at ¶¶ 20, 21; Doc. No. 76). Plaintiff continued to resist and refuse verbal commands. (Doc. No. 67 at ¶¶ 20, 21; Doc. No. 76). Defendant Branham then exited Plaintiff's cell. (Doc. No. 67 at ¶ 22; Doc. No. 76). Between 8:12:10 and 8:12:34, Defendant Branham and Officer Sutton struggled with Plaintiff to maintain

8

control of the leg restraints as Plaintiff continued to resist by pulling away from the door. (Doc. No. 67 at ¶ 23; Doc. No. 76 at ¶ 23). Officer King ran for help. (Doc. No. 67 at ¶ 23; Doc. No. 76 at ¶ 23). Defendant Branham then waited for additional officers to arrive. (Doc. No. 67 at ¶ 25; Doc. No. 76 at ¶ 25). Captain Mixon and others appeared roughly one-and-a-half minutes later. (Doc. No. 67 at ¶ 26; Doc. No. 76). During the interim there was not much struggle. (Doc. No. 67 at ¶ 25; Doc. No. 76 at ¶ 25). After Captain Mixon arrived, Defendant Branham gave Plaintiff permission to move away from the trap; Plaintiff's cell door was opened at 8:14:03. (Doc. No. 67 at ¶¶ 26, 27; Doc. No. 76 at ¶ 26, 27). At that time, several officers removed Plaintiff from his cell. (Doc. No. 67 at ¶ 28; Doc. No. 76 at ¶ 28). Plaintiff never turned over the cuffs. (Doc. No. 67 at ¶ 29; Doc. No. 76 at ¶ 29). The remainder of the video footage shows Plaintiff waiting in the hallway while items were removed from his cell.

As mentioned above, Plaintiff does not contest the sequence of events offered by Defendants. Plaintiff also acknowledges that he resisted and refused to surrender the handcuffs. But Plaintiff challenges Defendant Branham's use of leg restraints under the circumstances. Plaintiff asserts that the use of leg restraints was not necessary because Plaintiff's hands were cuffed behind his back so he was not a danger to anyone. (Doc. No. 76 at ¶¶ 12, 19, 25, 29, and 32). Plaintiff also maintains that Defendant Branham should have donned a body camera and used pepper spray instead of the leg restraints. (Id. at ¶¶ 17, 30).

Plaintiff's argument that he was not a threat fails to acknowledge an important aspect of prison life: following orders. And Plaintiff admits that he was holding the cuffs hostage to both speak with other officers and have his property returned. This was not an instance of Plaintiff's passive resistance or day-to-day policing of a prison though means of violence. Hickey v. Reeder, 12 F.3d 754, 758-59 (8th Cir. 1993). Plaintiff actively resisted the efforts of Defendant Branham

and others and acknowledged that he did so.  Further, cuffs can be misused and may present a threat to prison officials.  Without the leg restraints, an officer would have had to enter Plaintiff's cell to remove the cuffs.

Plaintiff testified that he suffered a laceration on his wrist and nerve damage because of Defendant Branham's actions.  (Doc. No. 66-1 at 16:13-16:16; 28:21-28:24).  Plaintiff said his arm was numb after the incident and remained numb for a few days.  (Id. at 33:12-33:20).  According to Plaintiff, he was cuffed when he was examined by medical at 8:30 that morning; medical saw no injury or trauma.  (Doc. No. 66-1 at 32:9-33:5; Doc. No. 66-4 at 4-5).  During the exam, Plaintiff told LPN Hollingsworth: "I'm straight"—slang for "I'm ok."  (Doc. No. 66-4 at 4).  Plaintiff said after he was in his cell and the cuffs were removed he noticed a cut. (Doc. No. 66-1 at 32:9-33:5).  Plaintiff was seen for a sick call on September 22, 2023.  He complained that Defendant Branham "pulled [his] arms handcuffed through the bars, causing damage" and complained of "numbness and pain to B/L hand."  (Doc. No. 66-4 at 2-3).   Hollingsworth saw no swelling or bruising; she prescribed acetaminophen.  While she did not diagnose Plaintiff with a sprain, she did educate Plaintiff about sprains.  (Id.).

Plaintiff wrote a witness statement that Defendant Branham did not hurt him, but Plaintiff said he signed the statement only out of fear.  (Doc. No. 66-1 at 34:12-36:19).

Even accepting all of this as true, Plaintiff has not offered any medical evidence suggesting that he ever sought further attention for numbness or other problems with his arm after the incident occurred.  Plaintiff even changed units in November 2023.  (Doc. No. 66-1 at 4:11-4:17).  Nothing in the record suggests Plaintiff sought medical assistance in the new unit.   In short, there is no evidence beyond Plaintiff's statement that he suffered lasting nerve damage because of Defendant Branham's use of the leg restraints.

Where Plaintiff was actively resisting Defendant Branham's orders and attempts to secure Plaintiff's cuffs, Defendant Branham was entitled to use some degree of force to restore order and recover the cuffs—especially considering that cuffs may be misused and present a danger to prison officers.  The Court notes that the inside of Plaintiff's cell is not visible in the video.  Johnson v. McCarver, 942 F.3d 405, 412 (8th Cir. 2019) ("where security camera footage of alleged excessive-force incident was inconclusive, court would accept non-movant's version of facts in reviewing motion for summary judgment").  But the only force Plaintiff alleges Defendant Branham used was pulling the leg restraints to gain access to Plaintiff's cuffs, which took place from outside of Plaintiff's cell.[2]  And the only documented evidence of Plaintiff's injuries are his reports of pain and numbness on September 22, 2023.   Again, pain inflicted during a prison security measure is not per se cruel and unusual punishment.  Ward v. Smith, 844 F.3d 717, 721 (8th Cir. 2016).   Rather, guards will be liable only "if they are completely unjustified in using force, i.e., they are using it maliciously and sadistically.'" Id.

Plaintiff has not presented proof with proof to establish facts in dispute that would preclude summary judgment in Defendant Branham's favor.  Wilson v. Miller, 821 F.3d 963, 970 (8th Cir. 2016) (allegations must be substantiated with sufficient probative evidence); Bolderson v. City of Wentzville, Missouri, 840 F.3d 982, 986-87 (8th Cir. 2016) (noting plaintiff's duty to meet proof with proof in affirming summary judgment in defendant's favor).  Considering the facts particular to this case, the Court believes no reasonable juror could find that Defendant Branham acted maliciously and sadistically when trying to remove Plaintiff's cuffs.  Under these circumstances, Defendant Branham is entitled to qualified immunity on Plaintiff's personal capacity claims

---

[2] If Plaintiff had walked to the door of his cell after the leg restraints were attached to his handcuffs, the need to pull on the leg restraints would have been diminished.  But Plaintiff acknowledged that he resisted.  Plaintiff did not voluntarily move towards the door.

against him.  Pearson v. Callahan, 555 U.S. 223, 232 (2009); see also Saucier v. Katz, 533 U.S. 194, 201 (2001).   The Court further notes that even if there was a violation, the Court is not aware of clearly established law that would put Defendant Branham on notice that his actions were unconstitutional, and Plaintiff has not provided the Court with such precedent.

### B.       Official Capacity Claims

Because Plaintiff has not established that Defendant Branham acted unlawfully, Plaintiff's official capacity claim also fails.  Moreover, Plaintiff has not identified an unconstitutional policy or practice that caused his alleged injury, and any official capacity damages claim against Defendant Branham is barred by the Eleventh Amendment.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

### V.       Conclusion

IT IS, THEREFORE, RECOMMENDED that:

1.       Defendant Branham's Motion for Summary Judgment (Doc. No. 66) be GRANTED; and

2.       Plaintiff's claims against Defendant Branham be DISMISSED with prejudice; and

3.       This case be CLOSED.

Dated this 9th day of March, 2026.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE